Good morning, Your Honor. Anthony Rodriguez from Morrison & Forster for PacWest Telecom, a defendant and the appellant in this action. I'm joined at counsel table by my colleague, Rebecca Salau. I'd like to reserve four minutes for rebuttal, please. And may it please the Court. This case arises from a state commission, the Nevada State Commission Arbitration, of an interconnection agreement between phone carriers, PacWest Telecom and Nevada Bell. Can I ask you, is the commission decision, the arbitration decision, or was the commission functioning under, I guess it's E-1, to approve what had been reached by arbitration? I think the way to view it, Your Honor, is that the commission, through its revised arbitration decision, was collapsing the two functions. Did they make that clear, or did it just happen? I think it is clear in the revised arbitration decision that they were reviewing the presiding officer, in this case, the arbitrator's decision. This is standard with how other commissions proceed, for example, in the... So at that point, when they're reviewing it, it's an arbitration decision, but then they go on to approve it? Is that what you mean? They go on to revise the arbitration decision and say, as revised, we approve the ruling and the carriers should interconnect in accordance with our revised arbitration decision. So are we looking at it as an action under E-1, or what? This is an action brought by Nevada Bell for judicial review under Section 252 E-6 of a state commission's approval of an arbitrated agreement. Oh, okay. That's fine. Okay? Yep. In that arbitration, the commission ruled that traffic that originates and terminates in a local calling area to any type of business, Internet service provider or other businesses, should be treated as a local call for reciprocal compensation purposes. And reciprocal compensation is something required under Section 251 B-5 of the Act. And the commission chose, even though it didn't have to, to make calls to Internet service providers subject to 251 B-5's requirements. And in doing so, the commission expressly cited the Federal Communication Commission's ruling in 1999, sometimes called the Declaratory Ruling, sometimes called the ISP Order, that said state commissions in arbitrations have the authority to elect to subject ISP traffic to 251 B-5. This is a ruling that Nevada Bell, in the course of the arbitration, told the commission was coming and billed it as definitive. This is going to be the definitive ruling. It came out. It gave the commissions an open door. This commission walked through it. The district court said that was error. The district court said the commission couldn't exercise the authority articulated and recognized by the FCC because it couldn't reach the issue. The commission couldn't even reach the issue. According to the district court, the parties in their arbitration pleadings, because they did not anticipate or expressly state when a new ruling comes out, you, the state commission, can apply it, tied the commission's hands, and the commission could not apply the authority recognized in the district court. The parties tied their own hands by stating what the issue for arbitration was. That's another view of it, right? Correct, Your Honor, but here our argument is that when the commission is arbitrating an agreement, it is obligated to apply FCC rulings. In fact, this Court has held that FCC rulings as they are issued are to be treated as part and parcel of the Act. That's a quote from the U.S. West v. Jennings case that Judge Browning wrote. But doesn't that depend on what is submitted as an issue for arbitration? It may, Your Honor. There may well be cases where a commission could be said to have co-opted or hijacked the proceeding and veered off course. Even though this is from Nevada, we don't have to use that kind of language. No, certainly not. However, in this case, the commission resolved the issue before it, and the issue presented by the arbitration petition was, should this traffic be entitled to reciprocal compensation pursuant to 251b-5? And as long as we're going to scrutinize these words, those words don't say, is it required by 251b-5? And in answering the question, the commission said what the FCC said it could say. Yes, this traffic is entitled to reciprocal compensation, not because it's required, but because we elect to treat it as so. Not because it's, quote, local, but because of our policies as a Nevada regulatory commission. I would say, Your Honor, a slightly different perspective would be what I believe the record shows, where the commission said this traffic begins and originates in a calling area. It begins with a caller. It goes to an ISP modem. To the extent that occurs within one local calling area, that is a local call. And the commission, the Nevada commission ---- I didn't make that determination in so many words, did I? The Nevada commission, in fact, I think did, Your Honor, in the record around page 351, said it's going to treat the call as two discrete components, the communications portion and the information access portion. And looking at the communication portion, this is where they applied their analysis of a call beginning and originating in a local calling area. It is a local call. It should be treated as such for all purposes. Now, the FCC, it is true in the declaratory ruling, had a different take. It had what's called the end-to-end analysis and said we're going to follow that call all over the world where it goes along the Internet. And that portion of the ruling, of the declaratory ruling, was vacated by the D.C. Circuit. And on remand, the FCC abandoned that logic. So while that was in place when the commission issued its decision, it was later vacated, something the district court really didn't give full effect to by continuing to treat the commission as bound by a since-vacated ruling. This may be interrupting your record, but I was puzzled in the commission's decision. I'm looking at their finding number 70 from the record presented. The parties were unable to show the portion of calls terminated through an ISP remain local, nor did any party provide a plausible way to distinguish between traffic bound for an ISP and a traffic bound for a non-ISP. How do you get these statistics as to how many of these things are ISP calls and how many aren't if you can't distinguish them? This is the last part of your question, please. I got the impression that there were statistics on how many were ISP calls and how do you get the compensation unless you know what's an ISP call and what isn't. Why is this problem of distinguishing them such a big problem in the commission's view? I can only speak to my impression. I can't speak for the commission, certainly. But I believe the record of the arbitration proceeding and as reflected in the paragraph Your Honor cited, we're talking about a massive volume of minutes that in real time have to be categorized and trued up and paid as a billing cycle closes. Now, if you were to go through and very carefully analyze each call, I suppose you could figure out... But then how would the compensation for the call be arranged? Because there are going to be occasions where the carrier can identify a block of numbers or to a particular customer who is an ISP. And so, of course, there are ways to find particular ISP customers, but you just take a bucket of minutes and look at them. You cannot tell unless you know something about the customers. There's nothing about the call that says this is an ISP call, this is a non-ISP call. And, in fact, in the record, the PUCN's staff expert specifically said ISP calls and non-ISP calls are functionally identical. I think that is what the commission's decision that Your Honor cites is picking up, that there's a functionality equivalence. As to billing purposes, when you can specifically identify the customer, then you can proceed and get the ISP compensation rate. So the result of the district court's decision is that the district court became the only federal court in the country to reverse a state commission arbitration decision requiring reciprocal compensation, at least on the merits, leaving no compensation structure in place. So PACWEST is obligated to terminate calls from Nevada Bell's customers for free unless something is done about it. PACWEST requests that this court reverse the district court and order it to grant summary judgment in favor of PACWEST and the commission. It's undisputed. Pardon me, but PACWEST must carry all calls from Nevada Bell that are long-distance calls that go beyond the local area free, right? Here we're talking specifically, Your Honor, about local calls that are placed. That's what you want to talk about. Yes. And you're characterizing these calls as local because they terminate an ISP within the area. But if that call were characterized as being interstate because it's going, not stopping at the ISP but going up into the Ethernet, then you'd have to carry it without any compensation, right? I don't think that is right because if this call truly were inter-exchange, then there's a different compensation regime that applies. However, I'm sorry. The different compensation would be the ones applied to trunk lines and long-distance calls? Long-distance calls. But that's a prism the FCC tried to put, tried to look at this kind of traffic through, and the D.C. Circuit vacated and said, really you haven't justified why you should treat this as interstate for compensation purposes. And, in fact, an FCC order called the Local Competition Order expressly says to state commissions, you can decide what qualifies as a local call. And here the Public Utilities Commission has said, in effect, if it looks like a duck and walks like a duck, it's a duck. So the long-distance viewpoint is what the FCC tried to do, and the D.C. Circuit vacated and the FCC did not try again. But if we were to affirm the trial court, you could apply for compensation under a different tariff for interstate calls? No, that's something that I think a Nevada bill would hotly contest, and that has not been. They can't have it both ways. They can't say the call is not local, it is interstate here, and then when you apply for an interstate tariff, say, well, the claim is not interstate, it's local. Well, Your Honor, that's effectively what they've done. And, in fact, in the record, Nevada bill's comments are, well, if you don't get reciprocal compensation, PacWest, you can collect charges, access charges, from your customers. But guess what? ISPs don't pay access charges, so I guess that's just too bad for you. So it's just a little too perfect. And that's why some 30 odd ---- But the position, as you understand it, Nevada bill, is you don't get reciprocal compensation because they're not local calls. And if we hold and affirm that they aren't local calls, or they haven't been found to be local calls properly, that if they become interstate calls, they're going to have another answer for you, which is we don't owe you any money anyway, and get it from your own subscribers. That's right, Your Honor. And to focus our point, the issue is ---- Please. The issue, Your Honor, is did the PUCN rationally determine that it should treat ISP calls as local calls under 251b-5, authority that the FCC expressly gave and has never wavered in telling carriers to abide by state commission rulings electing to treat ISP traffic as local under 251b-5. This commission did so, and it used its specialized regulatory expertise as the arbiter of the environment in Nevada to articulate reasons why this traffic should not be treated differently from other traffic that is functionally identical. So whether it's truly local or not, as this Court said in the PAC-Velle v. PAC-West case that Mr. Fong and I argued two years ago, is still up in the air. The FCC has taken two runs at saying it's not local, and both times the D.C. Circuit has shot it down. So it's a little unknown. There's no FCC ruling at the moment. Whether it's local or not, that's correct. And what about the present state of collection in Nevada? Is that governing the present payments? Correct, Your Honor. Because of the district court decision, there is no obligation imposed by the PUCN. And would anything that was done now, would that be retroactive? Absolutely, Your Honor. This is a decision that, but for the district court's ruling, would have been in effect since March or April 1999. The FCC has said that rulings like that are to be abided by and are to govern carriers until and unless a new agreement becomes effective or until and unless the agreement they're operating under has a change of law provision that allows Nevada Bell to impose new rates that the FCC released in 2001 that the FCC expressly stated were to govern only on a prospective basis. So granting some redundant to PacWest would give PacWest five years' worth of compensation that it should have been receiving all this time. But, you know, this is the sort of question no one thinks Congress should have dealt with rather than leaving it to judges. There may well be a number of judges on this Court and others who have thought that. And this Court has issued cases, U.S. West v. MFS and Telenet, and the Bell v. PacWest case where it affirms state commission decisions required to receive comp. And in doing so, it cited the declaratory ruling saying state commissions have the authority to make the call. The district court erred in not letting this commission make that call by taking an unduly narrow view of the issue before it. The commission had the authority to treat this traffic as local. It exercised that authority in a rational way that was not arbitrary and capricious. Four minutes, Your Honor. Thank you, Your Honor. Kevin Fong, Pillsbury Winthrop, representing Apolli, Nevada Bell. May it please the Court. Under the FCC's ISP order, if a state commission decides to award reciprocal compensation under state law, then that is something apart and outside of 251b-5. That's clear from paragraph 26 of the ISP order where the FCC says that a state commission may conclude that reciprocal compensation is appropriate in instances not addressed in 251b-5. That same point is made by the D.C. Circuit in the Bell Atlantic case on page 2 and also page 3 of the D.C. Circuit's opinion, where the D.C. Circuit states that looking at the ISP order, the FCC had taken calls to ISPs outside of 251b-5. So what's the significance of that? If, as the Nevada PUC stated in its decision, the issue presented for arbitration was whether reciprocal compensation for or, excuse me, whether ISP traffic is entitled to reciprocal compensation pursuant to 251b-5, that necessarily precludes a consideration of state law because under Bell Atlantic and the FCC's ISP order, the FCC and the D.C. Circuit have told us that it's either 251b-5 or it's state law, in which case it's outside of 251b-5. Looking at the face of the Nevada PUC's decision, it appears that the Nevada PUC was opting to go under the 251b-5 issue. It said the issue presented for arbitration is whether ISP traffic is entitled to reciprocal compensation pursuant to 251b-5. When it says pursuant to 251b-5, that means, and by the way, not under state law. We mean under 251b-5. Well, now, if you just look at the statute itself, 251b-5, it doesn't tell you anything about what should guide the commission. Isn't that correct? It's just that under 251b-5, compensation should be arranged, but you're not told how or what. It's actually 251b-5 read in conjunction with the FCC's regulations, which limit 251b-5 to solely local traffic. So when we say 251b-5, by definition, we're talking about only local traffic because before this whole dispute arose over ISP traffic, the FCC had at least made one thing clear, which is 251b-5 should be read as applying only to truly local traffic. And that's FCC what, an order? It's in the CFR. It's an FCC rule. Rule. And nobody has held that to be invalid. Absolutely not. That's one thing that everybody has taken for granted, that 251b-5 applies only to local traffic, and then you get this huge dispute over what's local traffic and what's not local traffic. But at least that much is settled, Your Honor. And why should we think the district court in Nevada knew better than the Nevada commission? That the district court in Nevada knows better what's local traffic than what the commission thought was local traffic. Oh, it's not that the district court is second-guessing the Nevada PUC's determination. It's essentially telling the Nevada PUC, we just need a better explanation here of what you were doing. It stems from a trilogy of cases, January 1, January 2, and the Federal Power Commission versus Texaco. With the Court's indulgence, let me just walk through quickly, and then I'll get back to the question. January 1 essentially says that an agency must disclose the basis for its decision. It must disclose its reasoning. January 2 gives an interesting recap of January 1 and notes that there are really two propositions in January 1. First, that a court can't second-guess or substitute its discretion for the agencies. But as it correlates to that, the agency has to tell the courts what it was doing in the first place. That's January 2. And more recently, the U.S. Supreme Court in the Federal Powers Commission versus Texaco decision gave a little bit more elaboration explaining, well, why is it? What's the reasoning behind the January decisions? And the reasoning is, if you're going to have an agency exercise discretion given to it, either by Congress or by the Federal Commission or whatever source, we're going to give deference to that, but we need to know that you, in fact, were exercising that discretion. You have to tell us in plain terms, we are exercising our discretion pursuant to X. Well, doesn't the commission tell us, we think these are local calls and give them at least one reason why they think they're local calls? But in the paragraph 70, the Nevada commission throws up its hands and says, we really can't determine where these calls terminate. So I think looking at the commission's decision in total, the one thing that seems to jump out is on page 351 of the excerpts of record, the Nevada PUC tells us, or seems to be telling us, that it's adjudicating the entitlement pursuant to 251b-5. And that in itself needs to be explained. If they were adjudicating something other than 251b-5, as PacWest asserts, they need to tell us that. But if they tell you that, then they're outside the scope of the arbitrable issue. Well, I think it is possible that they can explain how the arbitrable issue migrated. It is possible to explain that, but we don't have that explanation yet. And we need to see that explanation before we can make a fair assessment over whether it was a legitimate or not a legitimate revision or migration of the issue for arbitration.  Would you be satisfied if this were remanded to the district court for the finding of the order saying, tell us the reasoning process by which you arrived at the determination this was a local call to the ISP? Or just tell us your reasoning altogether. I think the district court said, redo the analysis, which is a shorthand for comply with Chenery I and its progeny. Tell us how you got to where you got. So if this goes back to the PUC and they say, well, since when you connect with an ISP, there's no additional charges no matter how long you're on the line. It's just like a local call, and therefore it's a local call. That's how we got to it. That may be what they plan on telling us. The PUC clearly doesn't mind telling us because they haven't appealed. They're ready to tell us, but we just need to clear through this process to get it back. The finding in paragraph 70 indicates that they can't do that. It's going to be difficult in light of 70, but they may decide to revise paragraph 70. All the district court did was remand for a better explanation, essentially redo the analysis, tell us how you got from the original question in the petition for arbitration to the conclusion you reach in 77, in paragraph 77 of the decision. You need to connect the dots. There are dots there, but we need some guidance on how you connected the dots so that we, the courts, can then evaluate that under the proper standard of review. Now, this isn't the first time something like this has happened. In one of the cases cited by PacWest, the Bell South versus Synergy decision, it's a Kentucky district court decision. PacWest cites it for the population. Before you, excuse me just a moment. You asked for more reasons. Weren't the PUC's reasons for its decision given in the 41299 order adopting revised arbitration decision specifically the PUNC agreed with staff analysis of the presiding officer's arbitration decision, and then there was a summary of the staff analysis that was given. Wasn't there, isn't that sufficient? But immediately after that, on page 351 of the excerpts of record, it then goes back and says the issue is, in fact, whether ISP traffic is entitled pursuant to 251b-5 to reciprocal compensation, which is something totally different than the staff's analysis. So it's sort of in a state of confusion. We just don't have enough here now to have a clear read of what exactly the exercise of discretion was. And until we know what the exercise of discretion was, we can't tell if it was arbitrary or capricious or whatever. So going back to that BellSouth Synergy decision, BellSouth Synergy essentially says, yes, you can have a change or revision or migration of the question that's presented by the petition for arbitration. But in that case, the commission made an express determination that the issue presented for arbitration had changed, and that's what's missing here. We may or may not have a change in the question for arbitration, but we don't have an explanation by the Nevada PUC itself of how that question changed. And just here in the last half hour between the arguments of PAC-WES and my arguments and the questions of the court, there are two, three, four different possible explanations of what the Nevada PUC may have had in mind or may say if remanded pursuant to the district court order, but we just don't know which of those is the most likely. And the Nevada PUC is sitting there waiting to tell us as soon as the district court's remand order gets affirmed. Two quick points, and then I'll wrap up here. In its reply brief and also in oral argument, PAC-WES has argued that the Nevada PUC was somehow required to consider state law considerations as opposed to 251b-5 considerations, and they cite the global NAPS district court case. That's really distinguished. A global NAPS says that in interpreting an interconnection agreement, you have to look to state law. That's not a surprising proposition of law. If you're interpreting an agreement, you need to look to the governing state law. Nothing holds that a state commission must consider the entitlement of ISP traffic to reciprocal compensation under state law. The FCC and the D.C. Circuit say that you can do that. That's a possibility. You may want to. But implicit in that is a state commission can say we're not even going there. We're just going to approve an interconnection agreement with reciprocal compensation provisions governing local traffic and not even touch the ISP question. That's what happened in a lot of interconnection agreements during the 90s, and that's what gave rise to all of these cases. You had interconnection agreements approved by state PUCs, but they didn't directly address reciprocal compensation for ISP traffic. There's no requirement whatsoever in either the FCC's ISP order or the subsequent remand order for consideration of state law. And finally, Backless has mentioned this court's prior decision in the Pacific Bell case, the California ISP reciprocal compensation case. If anything, that shows that even though state commissions may consider reciprocal compensation for ISP traffic, they have to abide with 252. And that's why in the California case, the Pacific Bell case, a large portion of the California PUC's orders were thrown out and sent back for reconsideration because there was not compliance with 252. And that's all the district court essentially is requiring here, a sufficient explanation pursuant to January. Thank you, Your Honors. You've still got five minutes. Unless there are any further questions, Judge Jones? No, thank you. Thank you very much. You have four minutes, sir. Thank you, Your Honor. Under it all, under all the briefing, under all the sites to the record, under the sites to the many cases around the country on this issue, there's a pretty unremarkable proposition. Can a state commission, which this court has said acts as a deputized federal regulator in arbitrating interconnection agreements, can a state commission apply a newly issued ruling by the FCC articulating its authority? The district court said no. That's subject to how the parties write questions in arbitration petitions months or years before the FCC acts. That cannot be the law for this system to work with the FCC taking the lead and the state commissions implementing what the FCC says they can do. Second key point that cannot be lost, there is no requirement that any state commission establish and prove that an ISP call truly is local. The FCC hasn't done that and has said there's no federal rule, at least at the time this commission decision was made, blocking state commissions from requiring reciprocal compensation for ISP traffic. The FCC did not say if a state commission can do what we can't do, if they can prove it's local or not, then they can make a recip comp determination. It said they can elect to treat it for their own reasons. And here the PUCN did two key things. In paragraph 16 of its revised arbitration decision, page 351 of the record, it specifically cited under the heading procedural history that the FCC had issued the declaratory ruling and had recognized state commissions having discretion to require recip comp. Then in its rationale, it articulated why these calls in Nevada that originate and terminate in a local calling area to whatever kind of subscriber, ISP, pizza parlor, travel agency, should be treated the same. They should be treated under the local rate structure and part of that rate structure is reciprocal compensation. They did not attempt to fill the void that remains to this day about what is truly local. They elected to treat it like other calls based on their determination of what happens when a call originates and terminates in a local calling area. They didn't touch this issue of what do you do with the call as it goes off to websites around the world. And they didn't have to. And no court has required a state commission to make that determination as a condition of affirming. And it's an unbroken string of affirmances of state commission arbitration decisions for recip comp. No court has imposed that requirement. As Judge Jones noted, the staff did analyze the arbitration decision and articulated why the commission should overrule that decision. And interestingly, the arbitration decision did not have a one sentence. Well, the FCC has said it's not required under 251. No, even the arbitrator who ruled their way went on for page after page to discuss, well, what should we do with this traffic? Is it local or not? So any migration here is really just rhetoric. The issue before the commission was could it treat this traffic as local? It said it could and articulated rationales for doing so, and it should be affirmed. Thank you. Thank you very much. If I may stand submitted. Thank you very much.
judges: Noonan, Callahan, Jones